[Civ. No. 65177. Second Dist., Div. Three. Mar. 22, 1983.]

HUNTINGTON PARK REDEVELOPMENT AGENCY,
Plaintiff and Appellant, v.
DAVID DUNCAN et al., Defendants and Respondents.

18

COUNSEL

Michael B. Montgomery and Steven N. Skolnik for Plaintiff and Appellant.

Bruce E. Clark for Defendants and Respondents.

OPINION

**POTTER, Acting P. J.**—The Huntington Park Redevelopment Agency (hereinafter Agency) appeals from a judgment dismissing its eminent domain proceedings against the owners of a parcel of real property within its redevelopment area after a legal issue trial on the question of whether the property was subject to condemnation.

Evidence at the trial established that defendants, David and Marilyn F. Duncan, are the owners of a parcel of real property located within the boundaries of an area designated as the Huntington Park Industrial Redevelopment Project (hereinafter Project).[1] The Duncans own and operate a wholesale industrial bolt supply business on a portion of the property. The other portion of the property is used as a parking lot by their month-to-month tenant. Frank and Erlys Spitzer own property adjoining the Duncan property where they currently operate a manufacturing business. The Spitzers submitted a proposal to expand their business onto that portion of the Duncan property which is used as a parking lot (the parcel).

By letter dated August 21, 1979, the Agency officially notified the Duncans that it was "considering the acquisition" of the parcel and that discussions with the Spitzers "have recently revealed that the project may be feasible and that the Redevelopment Agency may pursue an Owner's Participation Agreement with them. . . ."

---

[1]The project was adopted by the City of Huntington Park in 1977 pursuant to the California Community Redevelopment Law. (Health & Saf. Code, § 33000 et seq.)

On September 14, 1979, defendants submitted to the Agency a "Statement of Interest in Participating," summarily indicating their plan to improve the parcel with a machine shop "to fabricate metal to customers' requirements." In a letter dated October 1, 1979, James Funk, executive director of the Agency, acknowledged receipt of the Duncans' "Statement of Interest" and requested more details regarding the Duncans' proposed use of the subject property, including the "floor area of the proposed building, the location of the buildings on the parcel, the proposed schedule of construction, and [their] willingness to enter into an owner participation agreement with the Redevelopment Agency that would guarantee completion of the project within two years." By this letter, the Duncans were informed that all proposals would be released at a scheduled public meeting.

On October 17, 1979, the Agency held its first public meeting to consider proposals for development of the parcel. It was attended by the Duncans, the Spitzers, their respective counsel, and Agency members. At the meeting, the details of the Spitzer plan were disclosed. The Spitzers proposed to expand their manufacturing business by erecting a 10,800 square foot industrial structure with a market value of "at least $108,000." The Spitzers made a commitment to complete the development and construction of the project within a year.

At that meeting, the Duncans also submitted a detailed version of their construction plan to the Agency. The Duncans proposed to construct a 8,820 square foot metal machine shop. The proposal estimated construction costs of $87,628 but did not give a time estimate for completion of construction.

The meeting was adjourned until October 29, 1979, and an expert consultant was retained to analyze the competing plans. During the interval, counsel for the Duncans spoke with the consultant who "encouraged" the Duncans "to call him." During this period, the Duncans also obtained a copy of the Spitzer plan.

Prior to the October 29, 1979 meeting, the consultant submitted a report to the Agency which analyzed the two proposals and recommended acceptance of the Spitzers' proposal, as that project would "be of higher intensity and of greater value relative to the size of the parcel than the development proposed by the [Duncans]." The report noted that the Spitzer proposal would provide 35 jobs and would raise the annual sales of the Spitzer company by $2 million, an increase of 100 percent. The Spitzer plan would also result in a tax increment to the Agency of $1,080 per year. In contrast, the consultant concluded that the Duncan plan would result in only eight assured new jobs and a tax increment of $880.

The report also concluded that the Duncans' proposed construction could be adequately accommodated on the remaining property owned by the Duncans.

The report further noted that the Spitzers had made a commitment to complete the project within a year while the Duncans had "declined to commit to a definitive construction schedule."

It appears that counsel for the Duncans received the expert's report at the October 29 meeting.[2]

At this hearing, Duncan would not commit himself to a definite starting date. According to Duncan's own testimony, Agency members asked him "when [he] could start construction. They wanted a definite [starting] date . . . and [he] said, 'I would need a little time to think it over' and that was the end of the conversation."[3] At the conclusion of the hearing, the Agency approved the Spitzer proposal.

Duncan refused the Agency's offer to purchase the property. At a public meeting, held January 21, 1980, the Agency passed "A RESOLUTION . . . FINDING AND DETERMINING THAT THE PUBLIC INTEREST, CONVENIENCE AND NECESSITY REQUIRE THE ACQUISITION OF CERTAIN REAL PROPERTY FOR PUBLIC PURPOSES," which is a prerequisite for the initiation of eminent domain proceedings. (Code Civ. Proc., § 1245.220.) At that hearing, the Duncans objected to the adoption of the resolution. The Agency found, inter alia:

"(1) The public interest and necessity require the proposed project; and

"(2) The proposed project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury; and

"(3) The property . . . is necessary for the proposed project."

Pursuant to the adoption of the resolution of necessity, the Agency filed its complaint in eminent domain against the Duncans to acquire the parcel. As a defense,[4] the Duncans urged that the Agency abused its discretion in adopting the resolution of necessity specifying the Agency's refusal to give proper consideration to their request for owner participation. The Duncans further urged that the Agency made an agreement to allow the Spitzers to develop the property prior to notifying the Duncans that the taking of the parcel was under consideration.

---

[2]When counsel for Duncan was asked whether he received a copy of the consultant's report at that time, he replied, "I believe I did," and further indicated that he responded at the hearing to the primary differences noted in the report.

[3]The testimony of Duncan's counsel that he "indicated" at the hearing that Duncan would build the building within a one-year time frame does not create any substantial conflict with Duncan's clear admission, which was in accord with the testimony of the administrative director of the Agency.

[4]See, Code of Civil Procedure, section 1245.255, subdivision (a)(2).

At trial, defendants did not present a complete record of the proceedings of October 17, 1979, October 29, 1979, or January 21, 1980. Rather, some of the parties who were present at the proceedings on October 17 and October 29 testified as to their recollection of the proceedings as recited above. There was no evidence of the proceedings of January 21, 1980. All of the documents referred to above, including the two competing proposals and the independent consultant's report, were received in evidence pursuant to stipulation of counsel.

Based on the foregoing, the trial court concluded that the Agency was "not entitled to take the real property of defendants" and in its findings of fact and conclusions of law, the court determined:

"17. The adoption of the Resolution of Necessity on January 21, 1980, purporting to authorize the taking of a portion of said defendants' real property did not have the conclusive effect prescribed in C.C.P. Section 1245.250 because its adoption was influenced or affected by a gross abuse of discretion by the governing body.

"18. The public interest and necessity do not require the project for which this action was commenced.

"19. The project for which this action was commenced is not planned or located in the manner that will be most compatible with the greatest public good and the least private injury.

"20. The property sought to be acquired in this action is not necessary for the Huntington Park Industrial Redevelopment Project, except as to improvement by defendants pursuant to owner participation under said project."

The trial court dismissed the complaint and this appeal followed.

*Contentions*

Appellant contends that the trial court erred in dismissing the eminent domain complaint in that: (1) the Agency did not abuse its discretion in adopting the resolution of necessity; (2) the judgment is not supported by substantial evidence, as respondents failed to sustain their burden of showing that the requirements for issuance of the resolution were not met; (3) the alleged denial of owner participation rights does not constitute an independent defense to the right to take in an eminent domain action; and (4) the alleged abuse of discre-

tion in enacting the Resolution does not constitute an independent defense to eminent domain.

Respondents contend the order of dismissal was proper in that: (1) the Agency abused its discretion by its failure to apply a standard of reasonableness and good faith in its owner participation decision; (2) the denial of statutorily mandated owner participation constitutes a violation of the constitutional rights of property owners; and (3) the proposal selected violates the space limitation requirements of the redevelopment plan.

## Discussion

### Summary

The proper scope of the trial court's inquiry was limited to the question of whether the Agency committed a gross abuse of discretion in adopting the resolution of necessity. To show gross abuse of discretion, defendants were required to sustain their burden of proving the lack of substantial evidence to support the resolution. Defendants' status as owners desiring participation did not preclude Agency from exercising its discretion to take defendants' property. The reconstructed record of the Agency proceedings presented at trial demonstrates the existence of substantial evidence to support the resolution and therefore the judgment must be reversed.

### ■ Proper Scope of Court Review Is Limited to Determination of Whether Agency Committed Gross Abuse of Discretion in Adopting Resolution of Necessity

The Agency's authorization to file an action in eminent domain is dependent on the passage of a valid resolution of necessity which finds that:

"(a) The public interest and necessity require the project.

"(b) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury.

"(c) The property sought to be acquired is necessary for the project." (Code Civ. Proc., §§ 1240.030, 1240.040.) The resolution of necessity is "an administrative determination" that these statutory prerequisites have been met for the taking of particular property. (Law Revision Com. com. to Code Civ. Proc., § 1245.230 (1975 added).)

Once the resolution has been adopted, it conclusively establishes its findings (Code Civ. Proc., § 1245.250) and eminent domain proceedings may be instituted.

The Legislature relieved the harshness of this rule by enacting Code of Civil Procedure section 1245.255, subdivision (a) which permits a "person having an interest in the property described in a resolution of necessity" to collaterally attack its conclusive effect (1) "[b]efore the commencement of the eminent domain proceeding, by petition for a writ of mandate pursuant to [Code of Civil Procedure] Section 1085 . . . . [or] (2) [a]fter the commencement of the eminent domain proceeding, by objection to the right to take pursuant to this title."

Section 1245.255, subdivision (b), further provides: "A resolution of necessity does not have the [conclusive] effect . . . to the extent that its adoption or contents were influenced or affected by gross abuse of discretion by the governing body."

The legislative committee comment to the section unequivocally states that "the scope of the court's review under this section is limited to a determination of whether the resolution is supported by substantial evidence."

The burden of showing such lack of substantial evidence necessarily falls on the party challenging the resolution. It is well-settled in mandamus proceedings (Code Civ. Proc., § 1085) that the party seeking review "must make some showing that the body invested with discretion has acted arbitrarily, capriciously, fraudulently, or without due regard for his rights and that the action was prejudicial to him. [Citations.]" (*Fair* v. *Fountain Valley School Dist.* (1979) 90 Cal.App.3d 180, 187 [153 Cal.Rptr. 56]; see also, *Ward* v. *County of Riverside* (1969) 273 Cal.App.2d 353, 357 [78 Cal.Rptr. 46]; *Dave's Market, Inc.* v. *Dept. Alcoholic Beverage Control* (1963) 222 Cal.App.2d 671, 677 [35 Cal.Rptr. 348].)

Similarly, in administrative mandamus proceedings (Code Civ. Proc., § 1094.5), which are analogous to the review sought in the present case, the burden is on the challenging party " 'to demonstrate wherein the proceedings were unfair, . . . or showed "prejudicial abuse of discretion." It is the responsibility of the petitioner to make available to the court an adequate record of the administrative proceedings; if he fails to do this the presumption of regularity will prevail. [Citation.]. . .' " (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 691 [104 Cal.Rptr. 110].)

Defendants' election to challenge the validity of the resolution by a defense to an eminent domain proceeding (Code Civ. Proc., § 1245.255, subd. (a)(2)), rather than by an independent petition for writ of mandate (Code Civ.

Proc., § 1245.255, subd. (a)(1)), is a procedural matter only and provides no basis for shifting the burden of proof, or relaxing the requirement that the challenging party produce an adequate record.

### ▇ *Resolution Supported by Substantial Evidence*

Appellant's contention that the Duncans failed to sustain their burden of proving that the Agency abused its discretion in adopting the resolution is meritorious and requires reversal of the judgment.

The Duncans did not present a full record of any of the administrative proceedings which it requested the trial court to review. On the basis of the evidence of the hearings, which were reconstructed through testimony and documents presented at trial, we conclude that the Duncans failed to demonstrate a lack of substantial evidence to support the Agency findings in the resolution of necessity. Rather, the Agency's selection of the Spitzers' proposal was well within the bounds of discretion and was based on factors consistent with the Agency's mandate to "prevent the spread of blight and deterioration."

Prior to the Agency's decision, the Spitzers openly committed themselves to a definite time frame for completion of the facility, while the defendant would not. Consideration of this factor is certainly consistent with the aims of the Agency.

Moreover, the Spitzer building would provide a greater tax increment to the Agency and would provide 35 new jobs, while defendants' plan would assure only 8 new jobs. The Spitzer proposal would add $2 million to the area's gross revenue; no showing of a comparable enhancement of productivity was made by the Duncans.

Defendants' contention, that the Agency's decision to select the Spitzers' proposal violated the statutes and regulations regarding owner participation, is without merit. Defendants' status as owners desiring participation in the project did not preclude the Agency from exercising its discretion to take defendants' property. An owner of a particular parcel does not have an absolute right to develop that parcel.

In this regard, Health and Safety Code section 33339 provides: "Every redevelopment plan shall provide for participation in the redevelopment of property in the *project area* by the *owners of all or part of such property* if the owners agree to participate in the redevelopment in conformity with the redevelopment plan adopted by the legislative body for the area." (Italics added.) In interpreting the predecessor statute to Health and Safety Code section

33339, our Supreme Court noted: "That there is no absolute right of owner participation in the redevelopment of each separately owned parcel of land within the project area is apparent from the provisions of section 33701 [now 33339] itself in that it provides that as a condition thereof an owner desiring to participate must agree 'to participate in the redevelopment in conformity with the redevelopment plan adopted by the legislative body for the area.' " (*In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 59-60 [37 Cal.Rptr. 74, 389 P.2d 538]; see also, *Sanguiuetti* v. *City Council* (1965) 231 Cal. App.2d 813, 825 [42 Cal.Rptr. 268].)

Rather, in exercising its eminent domain powers to acquire property of owners desiring participation, the Agency has a "duty of reasonableness and good faith" and is required only to "act fairly and without discrimination." (*Fellom* v. *Redevelopment Agency* (1958) 157 Cal.App.2d 243, 250 [320 P.2d 884].)

The Agency rules governing owner participation in the Huntington Park Redevelopment Project only require the Agency to: "[E]xtend preferences to persons who are *owners* and business tenants in *the Project area,* to continue in or, if the Agency acquires the land of an owner or the land on which a business tenant is located, to re-enter the Project area if any such owner or tenant otherwise meets the requirements prescribed in the Redevelopment Plan and in these Rules." (Italics added.) No special status is accorded owners of particular parcels. The Spitzers and the Duncans have equal preference status under this provision.

The Agency did not violate its duty of reasonableness and good faith by selecting the proposal of a competing owner participant, over the Duncans, especially in view of the significant advantages of the Spitzer proposal.

Finally, defendants contend that the Spitzer proposal exceeds the space requirements of the redevelopment plan, as the proposed construction would cover 80 percent of the newly acquired parcel.[5] However, this contention overlooks the fact that the newly acquired parcel will be added to the parcel already owned by the Spitzers. The record does not show that the proposed construction would result in over 60 percent of the combined Spitzer property being covered by buildings.

In view of the required reversal, appellant's remaining contentions do not require discussion.

---

[5]Section 402 of the redevelopment plan states: ". . . [T]he amount of land which may be covered by buildings shall not exceed sixty percent (60%) for new construction . . . ."

The judgment is reversed, and the cause is remanded with directions to the trial court to enter an order overruling the Duncans' objection to the right to take.

Lui, J., and Danielson, J., concurred.

A petition for a rehearing was denied April 21, 1983, and respondents' petition for a hearing by the Supreme Court was denied May 18, 1983.