[No. B007556. Second Dist., Div. Two. Oct. 31, 1985.]

REDEVELOPMENT AGENCY OF THE CITY OF HUNTINGTON PARK, Plaintiff and Appellant, v.
NORM'S SLAUSON, Defendant and Respondent.

**COUNSEL**

Michael B. Montgomery and Steven N. Skolnik for Plaintiff and Appellant.

Musick, Peeler & Garrett and Donald J. Drew for Defendant and Respondent.

**OPINION**

**COMPTON, Acting P. J.**—The Redevelopment Agency of the City of Huntington Park (Agency) instituted this action in eminent domain to take four lots belonging to Norm's Slauson restaurant (Norm's). The lots constitute a major portion of Norm's parking area.

The trial court ruled that the Agency had no right to take the property. The Agency has appealed. We affirm.

Norm's started business at the present location in 1959, and in 1968 acquired the last of the property which constitutes the parking area. That lot was purchased from the City of Huntington Park (City) and is one of the lots which the Agency now seeks to acquire. Norm's caters to truckers and parking is critical to its operation.

In 1977, the City adopted its general plan, the land use element of which provided generally for residential zoning in the area in which Norm's is

located. The specific property on which Norm's is situated, however, was and continues to be zoned commercial.

Two years later, with the City's approval, Norm's expanded its capacity and remodeled its facility. The following year in 1980 Agency adopted an area redevelopment plan for a large part of the city. This plan, consistent with the general plan, provided for residential development in the city block which embraces Norm's property. The plan, however, made no particular mention of Norm's property.

One of the stated objectives of the plan was, inter alia, to "Eliminate blighting influences, including deteriorating buildings, incompatible and un-economic land uses, inadequate public improvements, obsolete structures, and other physical, economic and social deficiencies; improve the overall appearance of existing buildings, streets, parking areas and other facilities, public and private; and assure that all buildings, new and old, are safe for persons and businesses to occupy. [¶] *Encouraging existing owners, busi-nesses* and tenants within the Project Area *to participate in the redevelop-ment activities; thus sustaining the existing industrial and commercial base.* [¶] Provide adequate parcels and required public improvements so as to encourage new construction by private enterprise, thereby providing the city of Huntington Park *with an improved economic base.* . . . [¶] Providing adequate public improvements, . . . *which cannot be remedied by private* or governmental *action* without redevelopment." (Italics added.)

In addition, Health and Safety Code sections 33339 and 33380 provide that any redevelopment plan shall provide for owner participation and that a redevelopment agency shall permit owner participation in implementing any such plan.

At the time the Agency announced the adoption of the plan there was nothing to indicate to Norm's that it would not be permitted to continue to operate as in the past.

Clearly the Agency at no time contemplated elimination of Norm's op-eration. Even in these proceedings the agency does not seek to take the restaurant itself. Thus in 1980, when the redevelopment plan was adopted, Norm's with a newly remodeled facility would have had no reason to antic-ipate that any further participation on its part would be required in achieving the goals of the redevelopment plan for that area.

In fact, a letter to property owners which advised them of the redevel-opment plan stated in part: "The Huntington Park North Redevelopment

Plan will enable the Huntington Park Redevelopment Agency to *help existing businesses expand,* rehabilitate buildings and homes, replace sidewalks, curbs and gutters and other public improvements, provide new employment and provide new residential, commercial and industrial developments, and provide below market rate interest financing.'' (Italics added.)

As a consequence, Norm's did not request to participate in implementing the plan and made no input until it became the defendant in these proceedings by which, according to Norm's, the Agency would deprive it of 60 percent of its parking and effectively destroy the business.

The Agency's attempt to take the four lots in question was preceded by an agreement between the Agency and a developer by which the Agency agreed to acquire the property for transfer to the developer and the developer would build a condominium project thereon. The condominium project would cover a large portion of a city block. That agreement was followed by the issuance and sale of tax exempt bonds to pay for the acquisition.

In short, the agency, without any notice to Norm's, in effect sold the property and issued bonds to obtain the money to acquire the property all before taking any steps to condemn the property.

A public agency can take private property only under very limited circumstances, to wit, (1) the property is necessary for a public project; (2) the project is in turn necessary for a public purpose; and (3) the taking of the particular property is compatible with the greatest public good and the least private injury. (Code Civ. Proc., § 1240.030.)

As a condition precedent to the exercise of the power of eminent domain a public agency must hold a public hearing to determine whether a particular taking meets the above mentioned criteria. (Code Civ. Proc., § 1245.235.)

If, after such public hearing, the public agency determines that the proposed taking meets that criteria then it must adopt a resolution of necessity before proceeding to condemn the property. (Code Civ. Proc., §§ 1240.040, 1245.220.)

■ Implicit in this requirement of a hearing and the adoption of a resolution of necessity is the concept that, in arriving at its decision to take, the Agency engage in a good faith and judicious consideration of the pros and cons of the issue and that the decision to take be buttressed by substan-

tial evidence of the existence of the three basic requirements set forth in Code of Civil Procedure, section 1240.030, *supra*.[1]

The foregoing conclusion is compelled by the fact that (1) a resolution of necessity once adopted is conclusive on the issue of the existence of the three requirements (Code Civ. Proc., § 1245.250, subd. (a)), (2) a property owner is entitled to a judicial review of the validity of the resolution, and (3) the resolution of necessity is not conclusive if shown to have been influenced or affected by an abuse of discretion. (Code Civ. Proc., § 1245.255, subd. (b).)[2] There is a dearth of cases interpreting the statutory scheme. Legislative committee comment states that under section 1245.255, the validity of the resolution may be collaterally attacked by petition for a writ of mandate prior to the eminent domain proceedings or the conclusive evidentiary effect of the resolution itself may be collaterally attacked by objection to the taking in the eminent domain proceedings.

In *Huntington Park Redevelopment Agency* v. *Duncan* (1983) 142 Cal.App.3d 17 [190 Cal.Rptr. 744], the court appeared to state that the aggregate effect of the two prongs of the Code of Civil Procedure section 1245.255 is simply to place on the property owner who objects to the taking, the burden of showing that the agency's determination lacks evidentiary support.

---

[1]The legislative committee comment to Code of Civil Procedure section 1240.030 provides in pertinent part: "Subdivision (a) [of the statute] prevents the taking of property by eminent domain unless the public interest and necessity require the project. 'Public interest and necessity' include all aspects of the public good including but not limited to social, economic, environmental, and esthetic considerations . . . . [¶] Subdivision (b) prevents the taking of property by eminent domain unless the proposed project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury. This limitation, which involves essentially a comparison between two or more sites, has also been described as 'the necessity for adopting a particular plan' for a given public improvement. [Citations.] [¶] Proper location is based on two factors: public good and private injury. Accordingly, the condemnor's choice is correct or proper unless another site would involve an equal or greater public good and a lesser private injury. . . ." (Legis. Com. com. foll. Deering's Ann. Code Civ. Proc., § 1240.030 (1981) pp. 35-36.)

[2]Code of Civil Procedure section 1245.255 provides: "(a) A person having an interest in the property described in a resolution of necessity adopted by the governing body of the public entity pursuant to this article may obtain judicial review of the validity of the resolution: [¶] (1) Before the commencement of the eminent domain proceeding, by petition for a writ of mandate pursuant to Section 1085. The court having jurisdiction of the writ of mandate action, upon motion of any party, shall order the writ of mandate action dismissed without prejudice upon commencement of the eminent domain proceeding unless the court determines that dismissal will not be in the interest of justice. [¶] (2) After the commencement of the eminent domain proceeding, by objection to the right to take pursuant to this title. [¶] (b) A resolution of necessity does not have the effect prescribed in Section 1245.250 to the extent that its adoption or contents were influenced or affected by gross abuse of discretion by the governing body. [¶] (c) Nothing in this section precludes a public entity from rescinding a resolution of necessity and adopting a new resolution as to the same property subject, after the commencement of an eminent domain proceeding, to the same consequences as a conditional dismissal of the proceeding under Section 1260.120."

The *Duncan* case involved a unique factual situation described by the court as follows. ". . . David and Marilyn F. Duncan, are the owners of a parcel of real property located within the boundaries of an area designated as the Huntington Park Industrial Redevelopment Project (hereinafter Project). The Duncans own and operate a wholesale industrial bolt supply business on a portion of the property. The other portion of the property is used as a parking lot by their month-to-month tenant. Frank and Erlys Spitzer own property adjoining the Duncan property where they currently operate a manufacturing business. The Spitzers submitted a proposal to expand their business onto that portion of the Duncan property which is used as a parking lot (the parcel). . . . The Duncans also submitted a detailed version of their construction plan to the Agency. The Duncans proposed to construct a 8,820 square foot metal machine shop. The proposal estimated construction costs of $87,628 but did not give a time estimate for completion of construction. . . . Duncan refused the Agency's offer to purchase the property. . . . The Agency filed its complaint in eminent domain against the Duncans to acquire the parcel." The court held that the agency did not abuse its discretion in selecting the competing plan over that of the property owner.

We deal here with a factually distinguishable situation. The property owner in the *Duncan* case, while ostensibly attacking the resolution of necessity, was in reality attacking the Agency's decision to select one of two competing plans for the redevelopment of the property. No other alleged abuse of discretion was involved. The property owner did not contest the fact that the property should be subject to redevelopment.

In the instant case, it seems clear that the hearing which led to the adoption of the resolution of necessity was a sham and the Agency's policy making board simply "rubber stamped" a predetermined result.

By the time the Agency actually conducted a hearing to determine the "necessity" for taking the property in question, it had, by virtue of its contract with the developer and issuance of revenue bonds, irrevocably committed itself to take the property in question, regardless of any evidence that might be presented at that hearing. All the while the owner had been misled, if not deceived, as to what fate was going to befall his property.

That hearing was thus affected not by just a gross abuse of discretion but by the prior elimination of any discretion whatsoever. The effect of that abuse was, if not to nullify, to deprive the resolution of any conclusive effect on the three critical issues involved.

Based upon the foregoing scenario, we must then determine which party carries the burden of proof on the issue of whether the proposed taking

satisfies the basic requirements of Code of Civil Procedure section 1240.030 once the property owner has established an abuse of discretion and thus eliminated the conclusive force of the resolution of necessity.

"Burden of Proof" means the obligation of a party, if he is to prevail on a particular fact, to establish by evidence a requisite degree of belief or conviction concerning such fact in the mind of the trier of fact or the court. (See Evid. Code, §§ 115, 190.) ■ The customary degree of proof for noncriminal cases is the preponderance-of-the-evidence standard. It requires a party to convince the trier of fact that the existence of a fact sought to be proved is more probable than its nonexistence. (See BAJI No. 2.60.)

If we were to apply these fundamental precepts to a condemnation action, the party seeking to take private property would have the burden of establishing the elements of Code of Civil Procedure section 1240.030 by a preponderance of the evidence. For most governmental agencies in California, however, the adoption of a condemnation resolution by their governing board gives rise to a conclusive presumption that the taking is justified. ■ The 1975 comprehensive revision of the California eminent domain statutes attempted to meet the questionable constitutionality of the conclusive presumption (see *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]) by enacting Code of Civil Procedure section 1245.255, subdivision (b) which permits attack on the otherwise conclusive presumption where there has been a gross abuse of discretion by the governing body.

■ As we see it, once a defendant property owner establishes by substantial evidence that the resolution of necessity was invalidly adopted and because of a gross abuse of discretion is not entitled to its ordinary conclusive effect, the burden of proving the elements for a particular taking must rest on the governmental agency. In such a case, the trial court must then determine whether the agency has made its case by a preponderance of the evidence. Appellate review of the trial court's decision is limited by the substantial evidence test. (See *City of Los Angeles* v. *Keck* (1971) 14 Cal.App.3d 920, 926 [92 Cal.Rptr. 599]; *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

■ In the case at bench, as we have pointed out, the trial court, on the basis of uncontroverted evidence concerning the chronology which led to the hearing on the resolution of necessity, found that the resolution was affected by a gross abuse of discretion. The burden then devolved on the

Agency to establish to the trial court's satisfaction that the taking was proper.

In support of its decision to take the Agency offered the singularly unpersuasive testimony of its executive director who attempted to justify the decision to take the property in question.

He testified that the particular project, which required the inclusion of the four lots in question, was a marginal or "shaky" project. This was by way of explaining why the decision was made to take the four lots from Norm's parking area rather than other lots in the same area which were excluded from the condominium development. The testimony was that the excluded lots would, in the witness' opinion, have been more expensive to acquire and the marginal nature of the project required cost cutting at every turn.

The witness had no explanation for how the relative cost of the alternative sites was determined without even discussing with anyone in Norm's organization or determining from other sources the volume of Norm's business or the effect on that business of the loss of 60 percent of its parking. These matters would be crucial in determining the cost to the Agency in condemning the property.

The essence of the witness' testimony was contained in the answer to the single question of how the project would be affected by the elimination of the four lots in question. His answer was simply "It would be a less desirable project."

The trial court's decision was supported by substantial evidence, or put another way, by the absence of any substantial evidence from the Agency that the taking of the four lots in question was necessary to a public purpose or was compatible with the least private harm and the greatest public good.

In summary, an agency that would take private property for an alleged public purpose, must, as a prelude to determining that there exists the necessary requisites for taking under Code of Civil Procedure section 1240.030, conduct a fair hearing and make its determination on the basis of evidence presented in a judicious and nonarbitrary fashion. If it fails to so conduct itself, it will find itself, as here, having the burden of proving its case in court with the court being the final determiner of whether the taking satisfies Code of Civil Procedure section 1240.030. The governmental agency in such a situation cannot act arbitrarily and then seek the benefit of having its decision afforded the deference to which it might otherwise be entitled.

The judgment is affirmed.

Beach, J., and Gates, J., concurred.

A petition for a rehearing was denied November 22, 1985, and appellant's petition for review by Supreme Court was denied January 23, 1986. Lucas, J., was of the opinion that the petition should be granted.