[Nos. G002324, G002546. Fourth Dist., Div. Three. June 30, 1987.]

ANAHEIM REDEVELOPMENT AGENCY, Plaintiff and Appellant, v. FRANK A. DUSEK et al., Defendants and Appellants.

**COUNSEL**

Jack L. White, City Attorney, Oliver, Stoever & Laskin, Thomas W. Stoever and Charles S. Vose for Plaintiff and Appellant.

Weiser, Kane, Ballmer & Berkman, Bruce D. Ballmer, R. Bruce Tepper, Jr., and Kathryn Reimann as Amici Curiae on behalf of Plaintiff and Appellant.

Rutan & Tucker, Jeffrey M. Oderman and Leonard P. Swyer for Defendants and Appellants.

## OPINION

WALLIN, J.—The Anaheim Redevelopment Agency (Agency) appeals a judgment dismissing its complaint in eminent domain to acquire the Duseks' Pickwick Hotel. Appalled by what they contend was judicial usurpation of a legislative function, the Agency and amici curiae argue the trial court erred by granting the Duseks' motion for judgment (Code Civ. Proc., § 631.8)[1] based on the failure to include specific findings of fact in a resolution of necessity. In this case of first impression we must decide whether the Legislature intended to impose a duty on all condemning agencies to make specific factual findings in their resolutions of necessity. We also tackle the thorny issues of whether such resolutions are adjudicative or legislative and whether our characterization is consistent with the legislative intent.

The Agency passed a resolution to acquire the Pickwick Hotel to eliminate blight and for redevelopment purposes and thereafter filed its complaint in eminent domain.[2] The statutorily required resolution of necessity found and determined: Public interest and necessity require the proposed project; the proposed project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury; the real property is necessary for the proposed project; and the offer required by section 7267.2 of the Government Code has been made to the owner or owners of record. In a court trial of the legal issues, the Duseks moved for a nonsuit alleging the resolution of necessity was defective because it did not contain findings of fact to support the Agency's conclusions or a general statement of the public use as required by section 1245.230. The Duseks also argued the complaint was similarly defective in failing to describe the intended public use.

In granting the judgment dismissing the action, the trial court found the adoption of a resolution of necessity constituted a quasi-judicial act necessi-

---

[1] All future statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] The adoption of a resolution of necessity by a condemning agency or legislative body is a prerequisite to the filing of a complaint in eminent domain. (§§ 1240.040, 1245.220.) Following a hearing on the public necessity for the taking and the private injury to be suffered (§ 1245.235), the condemning agency must include a declaration within the resolution stating it has found and determined each of the following: "(1) The public interest and necessity require the proposed project. [¶] (2) The proposed project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury. [¶] (3) The property described in the resolution is necessary for the proposed project. . . ." (§ 1245.230, subd. (c).)

tating findings of fact to allow judicial review under section 1094.5.[3] It concluded the Agency's resolution was facially and fatally defective because it contained no findings of fact to justify the taking. The trial court, however, did not rule on whether the broad language of redevelopment used in the resolution sufficiently described public use.[4]

## I

*Is a redevelopment agency's resolution of necessity condemning a specific parcel within a redevelopment area subject to judicial review?*

Amici curiae present an enticing argument exempting redevelopment agencies from judicial review of resolutions of necessity condemning individual parcels within a redevelopment district. Amici contend the findings of necessity required under the eminent domain law were conclusively established at the time the redevelopment plan was adopted and a 60-day statute of limitations bars delinquent challenges to those findings. (Health & Saf. Code, § 33500.) Resolution of this important threshold issue will have to await another case. Although the legislative committee comment to the 1978 amendment to section 1245.255 suggests a redevelopment agency's resolution of necessity may not be judicially reviewed, the statutory exception cannot be applied without a sufficient record. There is no evidence presented in this record that the Duseks were notified the Pickwick Hotel was targeted for condemnation prior to the adoption of the amended redevelopment plan.[5] (See *Redevelopment Agency* v. *Norm's Slauson* (1985) 173 Cal.App.3d 1121 [219 Cal.Rptr. 365].) It would be inappropriate to exempt the Agency's determination of necessity from judicial review without a preliminary showing the Duseks had an opportunity to participate in the hearings preceding the adoption of the amended plan and thus had knowledge of the imminency of condemnation of their property.

---

[3] The Duseks did not challenge the facial validity of the resolution of necessity by petitioning the trial court for a writ of mandate. (§§ 1085 or 1094.5.) Instead they chose to attack the resolution's validity as a defense to the eminent domain proceedings. (§ 1245.255, subd. (a)(2); *Huntington Park Redevelopment Agency* v. *Duncan* (1983) 142 Cal.App.3d 17, 25-26 [190 Cal.Rptr. 744].) Therefore, sections 1085 and 1094.5 are only relevant insofar as they set forth the appropriate standard of review.

[4] In a postjudgment proceeding to tax costs, the trial court disallowed fees incurred by the Duseks in an earlier unsuccessful CEQA (California Environmental Quality Act) challenge (see *Dusek* v. *Redevelopment Agency* (1985) 173 Cal.App.3d 1029 [219 Cal.Rptr. 346]). Although the Duseks cross-appeal the denial of those fees, our disposition of the Agency's appeal renders moot the attorneys' fees issue.

[5] The original redevelopment plan was adopted in 1973; however, it was the amended plan, adopted in 1976, which specifically targeted the Pickwick for condemnation and demolition. (*Dusek* v. *Redevelopment Agency, supra,* 173 Cal.App.3d at pp. 1033-1034.)

II

*What is the appropriate standard of review of a resolution of necessity?*

In attempting to ascertain the applicable standard of review, the trial court made a threshold error. Instead of looking to the specific statutory standard compelled under the eminent domain law (§ 1245.255), it began its analysis with a determination of whether the adoption of a resolution was an adjudicative or legislative act. We therefore begin our analysis with section 1245.255, the statute which governs a collateral attack on a resolution of necessity.

■ "In construing a statute 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.]" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) "In the construction of a statute the intention of the legislature . . . is to be pursued, if possible; . . ." (§ 1859.) To ascertain the legislative intent in enacting section 1245.255, we trace the section from its 1975 birth in the Assembly through its reincarnation in 1978.

A. *The Statutory Right to Collaterally Attack a Resolution of Necessity.*

■ Prior to the enactment of the 1975 eminent domain law, a resolution of necessity could not be collaterally attacked. (*People* v. *Chevalier* (1959) 52 Cal.2d 299, 307 [340 P.2d 598].) Since "eminent domain is an inherent attribute of sovereignty" (*id.,* at p. 304), the determination of necessity is exclusively a legislative function. "[T]he questions of the necessity for making a given public improvement, the necessity for adopting a particular plan therefor, or the necessity for taking particular property, rather than other property, for the purpose of accomplishing such public improvement, cannot be made justiciable issues even though fraud, bad faith, or abuse of discretion may be alleged in connection with the condemning body's determination of such necessity." (*Id.,* at 307 )[6] Moreover, a resolution of necessi-

---

[6] Interestingly, the Law Revision Commission in revamping the eminent domain law favored retention of the *Chevalier* approach. In 1974 the commission released its "Recommendation Proposing The Eminent Domain Law" suggesting that validity of resolutions of necessity remain nonjusticiable. The commission concluded, "In the great majority of cases, the resolution of necessity of a public entity establishes a conclusive presumption of public necessity. The Commission has weighed the need for court review of necessity questions against the economic and procedural burdens such review would entail and against the policy that entrusts to the legislative branch of government basic political and planning decisions concerning the need for and design and location of public projects. The Commission has concluded that the policy to provide conclusive effect to the resolution of necessity of a public en-

ty becomes conclusive evidence of the public necessity for the taking. (§ 1245.250, subd. (a).)

In enacting section 1245.255, the Legislature overruled *People* v. *Chevalier* and provided for a very limited collateral attack on a resolution of necessity. (See Legis. Committee Com., West's Ann. Code Civ. Proc. (1982 ed.) § 1245.255, p. 588.) Section 1245.255 states in relevant part: "(a) A person having an interest in the property described in a resolution of necessity adopted by the governing body of the public entity pursuant to this article may obtain judicial review of the validity of the resolution: [¶] (1) Before the commencement of the eminent domain proceeding, by petition for a writ of mandate pursuant to Section 1085. . . . [¶] (2) After the commencement of the eminent domain proceeding, by objection to the right to take pursuant to this title. [¶] (b) A resolution of necessity does not have the effect prescribed in Section 1245.250 to the extent that its adoption or contents were influenced or affected by gross abuse of discretion by the governing body." Although the validity of the resolution is now justiciable, section 1245.255 narrowly circumscribes judicial inquiry without undermining the historical deference accorded legislative determinations of necessity.

*The 1975 Legislative Committee Comment*: The Duseks point to that portion of the 1975 legislative committee comment to section 1245.255 which states, "In addition to the collateral attack on the conclusive effect of the resolution permitted by Section 1245.255, the validity of the resolution may be subject to direct attack by administrative mandamus (Section 1094.5)." Within the same comment, however, and adding to the confusion as to the applicable standard of review, the Legislature acknowledged the distinction between a section 1094.5 review for *abuse of discretion* and a section 1245.255 review requiring a *gross abuse of discretion*.

The Agency, contending the 1975 comment stands in stark contrast to the 1978 revisions and the legislative intent behind section 1245.255, urges us to clarify that which the Legislature inadvertently or improvidently muddled. The Agency has formidable company in lamenting the confusion caused by the 1975 comment. In 1977, the Law Revision Commission drafted a "Recommendation Relating to Review of Resolution of Necessity by Writ of Mandate." The commission observed, "The extent to which an attack on the validity of the resolution may be made by writ of mandate is not clear."[7] Providing a telling insight, the commission stated in a footnote

tity is a sound one and should be continued." (Recommendation Proposing the Eminent Domain Law (Dec. 1974) 12 Cal. Law Revision Rep. (1975), p.1645.)

[7] Recommendation Relating to Review of Resolution of Necessity by Writ of Mandate (Dec. 1977) 14 California Law Revision Commission Report (1978) page 87 et seq.

to this sentence, "The Comment to Code of Civil Procedure Section 1245.255 (as originally enacted) states that 'the validity of the resolution may be subject to direct attack by administrative mandamus (Section 1094.5),' but it would appear that ordinary mandamus (Section 1085) rather than administrative mandamus is the proper remedy."[8] Ironically the very language relied on by the Duseks in support of their argument for a section 1094.5 standard of review provided the impetus for the Legislature to revise section 1245.255 and rewrite the legislative comment.[9]

The right to obtain judicial review of resolutions appeared in the original draft of Assembly Bill No. 11. As originally proposed section 1245.255 read: "A resolution of necessity does not have the effect prescribed in Section 1245.250 to the extent that its adoption or contents were influenced or affected by *abuse of discretion or arbitrary or capricious* action by the governing body. . . ." (Assem. Bill No. 11 (1975-1976 Reg. Sess.) § 1245.255.)

This version received considerable opposition from local governments. In a letter to a legislative committee, a law firm specializing in eminent domain and representing a redevelopment agency, summarized the opposition to the scope of review. "Abuse of 'discretion' means, simply, a questioning of the judgment of the local legislative body on the questions of public use and public necessity—the very areas that our courts have been most reluctant to invade in the past." In apparent response to these and similar concerns, the Assembly Subcommittee on Eminent Domain recommended a more deferential standard of review, "gross abuse of discretion."[10]

Assembly Bill No. 11 was subsequently amended to read: "A resolution of necessity does not have the effect prescribed in Section 1245.250 to the extent that its adoption or contents were influenced or affected by *gross* abuse of discretion by the governing body." (§ 1245.255, subd. (b).)[11] The comment to the amended section 1245.255 began, "Section 1245.255 is new. It permits a collateral attack on the conclusive effect of the resolution of

---

[8] *Id.,* at page 87, footnote 8.

[9] Mr. Robert J. Logan, City Attorney of San Jose, worked closely with the Law Revision Commission in drafting its 1977 recommendation. In a letter to the League of California Cities encouraging the League to support revision of section 1245.255, Mr. Logan wrote, "As you know, I spent many hours trying to bring about this kind of legislation to correct the mistaken remarks in the legislative comment attached to the original version of [section] 1245.225 . . . . Although this bill does not correct all of the evils inherent in the review of resolutions of necessity, it at least corrects a very serious error in the terms of the scope of review."

[10] Undated Report of Subcommittee on Eminent Domain furnished by the Legislative Intent Service.

[11] See Hearing on Assembly Bill No. 11, pages 124-131, 266, and 278 before the Subcommittee on Eminent Domain, Senate Judiciary Committee (1975).

necessity . . . ." but the following language was deleted, " . . . on the same grounds that the validity of the resolution may be directly attacked under the administrative mandamus statute. See Section 1094.5 ('abuse of discretion') and cases thereunder ('arbitrary or capricious action')."[12] However, the language to which the Agency objects, allowing an attack on the validity of the resolution by administrative mandamus, remained.

*The 1978 Revision to Section 1245.255*: This confusion prompted additional study by the Law Revision Commission. In 1978, Assembly Bill No. 2230 was introduced revising section 1245.255. Under the bill "(a) A person having an interest in the property described in a resolution of necessity adopted by the governing body of the public entity pursuant to this article may obtain judicial review of the validity of the resolution: [¶] (1) Before the commencement of the eminent domain proceeding, by petition for a writ of mandate pursuant to Section 1085. The court having jurisdiction of the writ of mandate action, upon motion of any party, shall order the writ of mandate action dismissed without prejudice upon commencement of the eminent domain proceeding unless the court determines that dismissal will not be in the interests of justice. [¶] (2) After the commencement of the eminent domain proceeding, by objection to the right to take pursuant to this title." (Assem. Bill No. 2330 (1977-1978 Reg. Sess.) § 1.)

An insightful review of Assembly Bill No. 2230 was provided the Senate Committee on the Judiciary. The report, in direct contradiction to the trial court ruling below, emphasized: "Assembly Bill 2230 would also make clear that ordinary, rather than administrative, mandamus is the proper writ. Review under ordinary mandamus permits the court to examine the proceedings before the public entity to determine whether adoption of the resolution was arbitrary or capricious or entirely lacking in evidentiary support or whether the public entity has failed to follow the prescribed procedures and give the required notices. Ordinary mandamus does not permit the court to substitute its own judgment for that of the public entity as to the need for the project and its proper location."[13]

The 1978 Legislative Committee Comment to section 1245.255 parallels the foregoing analysis. It states, "Judicial review of the resolution of necessity by ordinary mandamus on the ground of abuse of discretion is limited to an examination of the proceedings to determine whether adoption of the resolution by the governing body of the public entity has been arbitrary, capricious, or entirely lacking in evidentiary support, and whether the governing body has failed to follow the procedure and give the notice required

---

[12] *Ibid.*

[13] (Review of Resolution of Necessity by Writ of Mandate, Assem. Bill 2230, Mar. 9, 1978, from the legislative bill file of the Sen. Com. on the Judiciary.)

by law." (Legis. committee com., West's Ann. Code Civ. Proc. (1982 ed.) § 1245.255, p. 590.)

This protracted recitation of the legislative history of section 1245.255 supports the Agency's insistence the aberrational comment by the Legislature in 1975 was either inadvertent or, at least, was supplanted by the 1978 revisions to both the section and the comment. Section 1094.5's abuse of discretion standard, included in the original version of the assembly bill, was never enacted. Having revised this version to the more deferential standard of "gross abuse of discretion" the Legislature evidenced an intent to narrowly circumscribe the scope of judicial review. This intent was fortified by the 1978 revision in which the Legislature expressly stated that the vehicle to challenge the validity of a resolution of necessity before the commencement of condemnation proceedings was ordinary mandamus (§ 1085). There can, therefore, be no doubt that a section 1085 standard of review is applicable and findings of fact are not required. It would be incongruous to impose a more deferential standard of review on a pretrial challenge by writ of mandate but expand the scope of review and require findings when the challenge is raised as a defense to the eminent domain proceedings. (Compare § 1245.255, subd. (a) with § 1245.255, subd. (b).)[14]

B. *The Quasi-Judicial/Quasi-Legislative Quandary.*

 The trial court should have applied the standard of review dictated by the Legislature in section 1245.255. Instead it characterized the adoption of a resolution of necessity as a quasi-judicial act triggering a section 1094.5 scope of review. It then erroneously concluded the absence of specific findings thwarted a section 1094.5 review under the landmark case of *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12] "to bridge the analytic gap between the raw evidence and ultimate decision or order."

Attempting to salvage the favorable ruling, the Duseks argue the adoption of the resolution of necessity condemning the Pickwick Hotel was a determination of their specific property rights within the redevelopment district and was therefore adjudicative. They rely upon cases distinguishing legislative and adjudicative acts of government. "Generally a legislative function involves the application of a rule in all future cases, whereas quasi-judicial action is the determination of specific rights under existing law with regard to a specific fact situation." (*Mountain Defense League* v.

---

[14] This is precisely the result urged by the Duseks. However, under this scenario condemning agencies would be required to make findings in all cases since they would be unable to predict when a challenge would be made to the eminent domain proceedings. We find no support for this result in the legislative history of section 1245.255.

*Board of Supervisors* (1977) 65 Cal.App.3d 723, 729 [135 Cal.Rptr. 588].)
" '[A]djudicatory' matters in which 'the government's action affecting an individual [is] determined by facts peculiar to the individual case' [has been distinguished] from 'legislative' decisions which involve the adoption of a 'broad, generally applicable rule of conduct on the basis of general public policy.' " (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 613 [156 Cal.Rptr. 718, 596 P.2d 1134] quoting *San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205, 212-213 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973].)

The distinction is crucial to determining the appropriate standard of review. ■ If the Agency's adoption of the resolution is legislative, then its validity should be tested by the arbitrary and capricious standard of ordinary mandamus under section 1085. (*Mountain Defense League* v. *Board of Supervisors, supra,* 65 Cal.App.3d 723, 727.) If, on the other hand, the action is adjudicative, then the more rigorous standard of review compelled by section 1094 governs. "[B]efore sustaining an agency's decision . . . 'Section 1094.5 clearly contemplates that at minimum, the reviewing court must determine both whether substantial evidence supports the administrative agency's findings and whether the findings support the agency's decision. . . .' " (*Gabric* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 183, 193 [140 Cal.Rptr. 619] quoting *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at pp. 514-515.)

The Duseks argue that the Agency proceedings *prior to* formal adoption of the resolution had all the characteristics of a judicial proceeding. They were provided notice of the impending hearing and the opportunity to submit evidence that the removal of the Pickwick was not in the public interest, was not compatible with the greatest public good and the least private injury, and was not necessary to removal of blight from the area. The Duseks maintain the Agency's decision to condemn was clearly a quasi-judicial act determining the fate of their property rights.

The distinction between a quasi-legislative and quasi-judicial act was most recently explored in *Langsam* v. *City of Sausalito* (1987) 190 Cal.App.3d 871 [235 Cal.Rptr. 672]. There, the city council, construing an off-site parking ordinance to prohibit the proposed offices, denied the petitioners' appeal from the planning commission's decision. The city, like the Duseks, took "the position that since a hearing was required by law, evidence was required to be taken and discretion in the determination of facts was vested in the board of adjustment and the city council, the proceeding is quasi-judicial in nature and the standard of review is under section 1094.5." (*Id.,* at p. 879.) The trial court issued a writ of mandate under section 1085 compelling the city to issue a building permit to the owners of a building to

allow them to remodel the second floor to create offices. The Court of Appeal rejected the city's position. "[T]he mere fact that an agency proceeding may contain certain characteristics of the judicial process does not convert the proceeding into a quasi judicial function." (*Ibid.*)

The *Langsam* court relied almost exclusively on *Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271 [63 Cal.Rptr. 889]. Taken together, these two cases are dispositive. ■ Both courts recognize that legislative action involves much more than lawmaking. Quite often legislative bodies hold hearings and employ procedures characteristic of the judicial process "to uncover . . . the facts necessary to arrive at a sound and fair legislative decision." (*Id.,* at p. 279.) The mere presence of these elements does not convert legislative action into an adjudication of a private controversy. (See also *City of Santa Cruz* v. *Local Agency Formation Com.* (1978) 76 Cal.App.3d 381, 388 [142 Cal.Rptr. 873].) Moreover, both courts emphasized the dominant concern of legislative bodies is the effect on not only the property owners, but also their other constituents. In both cases, the issues posed " 'fundamentally political questions and the . . . decisions in response therefore represented an exercise . . . of essentially quasi-legislative powers.' " (*Langsam* v. *City of Sausalito, supra,* 190 Cal.App.3d at p. 881, quoting *Wilson* v. *Hidden Valley Mun. Water Dist., supra,* 256 Cal.App.2d at p. 281, fn. omitted.)

■ We too find the decision to condemn the Duseks' property for redevelopment "a fundamental political question" and therefore a quasi-legislative act. The Agency, like the water district in *Wilson* and the city council in *Langsam,* was concerned with a much larger constituency. The issue presented impacted all those living and working within the redevelopment district as well as those the Agency was attempting to entice to redevelop the area. The condemnation of the Pickwick was much more than a private dispute, for it had long been targeted for condemnation as a crucial step to redevelopment of a blighted area. The Agency was compelled to weigh the Duseks' property interests against the previously adopted policy to improve the quality of life for their larger constituency by removing blighted structures. These considerations are inherently legislative.

The trial court's contrary finding was erroneous. Moreover, it "then exacerbated this error by applying . . . section 1094.5 rather than . . . section 1085 as a method of review. Review under . . . section 1094.5 is not available where an agency is acting in a legislative capacity." (*Toso* v. *City of Santa Barbara* (1980) 101 Cal.App.3d 934, 942 [162 Cal.Rptr. 210], citing *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35 [112 Cal.Rptr. 805, 520 P.2d 29].)

This fundamental mistake led the trial court to dismiss the action for the Agency's failure to make specific findings. However, no specific findings were required. "Unlike . . . section 1094.5, section 1085 requires no written findings of fact in relation to administrative decisions reviewable under that statute. [Citation.] [¶] And we note that *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 514-517, expressly recites that its requirement of findings of fact relates to administrative orders reviewable under 'Code of Civil Procedure section 1094.5, the state's administrative mandamus provision which structures the procedure for judicial review of adjudicatory decisions rendered by administrative agencies.' [Citation.]" (*City of Santa Cruz* v. *Local Agency Formation Com., supra,* 76 Cal.App.3d 381, 391; see also *Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 787 [187 Cal.Rptr. 398, 654 P.2d 168].)

We must reverse the trial court's transgression into judicial legislation. The trial court imposed a duty upon a condemning agency to articulate specific findings of fact in its resolution of necessity despite a decided legislative policy to the contrary. The comprehensive revision of the eminent domain law grants only a limited right to judicial review of resolutions of necessity. Therefore, a court's narrow search for a gross abuse of discretion is easily accomplished without findings. It need not retrace the legislative body's analytic route when the statutory scheme requires much greater deference to a condemning body's determination of necessity.

C. *Huntington Park Redevelopment Agency* v. *Duncan and Redevelopment Agency* v. *Norm's Slauson.*

In concluding this section, we address the Duseks' claim that their position has been sustained by two appellate court decisions reviewing redevelopment agencies' resolutions of necessity. In *Huntington Park Redevelopment Agency* v. *Duncan, supra,* 142 Cal.App.3d 17 and *Redevelopment Agency* v. *Norm's Slauson, supra,* 173 Cal.App.3d 1121 disgruntled property owners within a redevelopment district challenged the validity of resolutions of necessity condemning their property. The Duseks argue that in both cases the courts applied a substantial evidence test to determine the validity of the resolutions. They are correct. However, from this premise they make a quantum leap unsupported by either case, not to mention section 1245.255. The Duseks contend the application of the substantial evidence test requires a quasi-judicial standard of review. Such a review, they reiterate, is impossible absent specific factual findings. They are wrong.

In *Duncan* two adjacent property owners were competing as owner-participants to improve a parcel pursuant to the redevelopment plan. The

agency selected what it determined was the superior proposal even though the decision required condemnation of the competing participant's property. The Court of Appeal held there was substantial evidence to support the agency's subsequently adopted resolution of necessity and there was therefore no gross abuse of discretion.

Similarly, the court in *Norm's* looked for substantial evidence of the existence of the three basic requirements set forth in section 1240.030. Before commencement of any hearings on public necessity the redevelopment agency contracted with a developer to build condominiums on a large portion of a newly improved parking lot of Norm's Restaurant and issued revenue bonds to finance the project. The court concluded, "By the time the Agency actually conducted a hearing to determine the 'necessity' for taking the property in question, it had, by virtue of its contract with the developer and issuance of revenue bonds, irrevocably committed itself to take the property in question, regardless of any evidence that might be presented at that hearing. All the while the owner had been misled, if not deceived, as to what fate was going to befall his property. [¶] That hearing was thus affected not by just a gross abuse of discretion but by the prior elimination of any discretion whatsoever. The effect of that abuse was, if not to nullify, to deprive the resolution of any conclusive effect on the three critical issues involved." (*Redevelopment Agency* v. *Norm's Slauson, supra,* 173 Cal.App.3d at p. 1127.)

The review undertaken by the courts in both cases was essentially different from the review of the resolution here. In both *Duncan* and *Norm's* the trial court reviewed the discretion exercised by the redevelopment agencies. Here the trial court refused to review the decision-making process for abuse because the resolution lacked findings "to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 515.)

In addition, in *Duncan* and *Norm's* the trial court did not find the condemning body obligated to make specific findings of fact to enable judicial review under 1094.5. Interestingly, the redevelopment agency's findings in *Duncan* were almost identical to those made by the Agency in this case. (*Huntington Park Redevelopment Agency* v. *Duncan, supra,* 142 Cal.App.3d at p. 22.) Both used the statutory language verbatim. Nevertheless, the *Duncan* court proceeded to review the adoption of the resolution for gross abuse of discretion without the specific findings the Duseks allege are a

necessary prerequisite to judicial review. Consequently, *Duncan* undermines rather than strengthens the Duseks' argument.[15]

## III

*Is redevelopment to eliminate blight a sufficient statement of public use?*

 Although the trial court failed to rule on whether the statement of public use in the resolution of necessity and the eminent domain complaint was sufficient, all parties urge this court to resolve the issue. The sufficiency of the purported public use is a question of law appropriately reviewed on appeal.

Sections 1245.230, subdivision (a) and 1250.310, subdivision (d)(1) require "[a] general statement of the public use for which the property is to be taken." The Duseks contend the Agency's statement the property was being acquired "for the elimination of blight and for redevelopment purposes" failed to satisfy this basic requirement. This argument must also be rejected.

 ██ The law is well established that redevelopment of blighted areas constitutes a public use.[16] (*In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 40-41 [37 Cal.Rptr. 74, 389 P.2d 538]; *Redevelopment Agency* v. *Del-Camp Investments, Inc.* (1974) 38 Cal.App.3d 836, 840 [113 Cal.Rptr. 762]; *Fellom* v. *Redevelopment Agency* (1958) 157 Cal.App.2d 243, 246-247 [320 P.2d 884]; *Redevelopment Agency* v. *Hayes*

[15] In *Duncan,* the court did rely upon the infamous 1975 legislative committee comment and again blurred the standard of review by referring to both section 1085 and 1094.5. The court wrote, "The burden of showing such lack of substantial evidence necessarily falls on the party challenging the resolution. It is well-settled in mandamus proceedings (Code Civ. Proc., § 1085) that the party seeking review 'must make some showing that the body invested with discretion has acted arbitrarily, capriciously, fraudulently, or without due regard for his rights and that the action was prejudicial to him. . . .' [Citations.] [¶] Similarly, in administrative mandamus proceedings (Code Civ. Proc., § 1094.5), which are analogous to the review sought in the present case, the burden is on the challenging party ' "to demonstrate wherein the proceedings were unfair, . . . or showed 'prejudicial abuse of discretion.' . . . [Citation.]" ' " (*Huntington Park Redevelopment Agency* v. *Duncan, supra,* 142 Cal.App.3d at p. 25.) To the extent this language suggests the *Duncan* court endorsed this Legislative Committee Comment, we disagree for the reasons discussed *ante* and reject any inference that section 1094.5 review is appropriate.

[16] The Duseks rely on the almost ancient and clearly distinguishable case, *Black Rock etc. Dist.* v. *Summit etc. Co.* (1943) 56 Cal.App.2d 513, 518 [133 P.2d 58]. Unlike the general statement on redevelopment and the removal of blight used here, an ordinarily private enterprise filed a complaint in *Black Rock* without any language that the designated purposes were for a public use and benefit. Moreover, as if directed to the trial court below, the *Black Rock* court admonished, "It is true that, with respect to certain corporations and governmental subdivisions, the *necessity* for taking private property for designated public purposes may be presumed from evidence of formally adopted resolutions to that effect." (*Id.,* at pp. 520-521.) The public use can, and should, be presumed from the adoption of the redevelopment plan.

(1954) 122 Cal.App.2d 777, 798 [266 P.2d 105].) The public use here was established when the redevelopment plan was adopted at which time the Agency acquired the statutory power to condemn property within the redevelopment district (Health & Saf. Code, § 33391). The Duseks had 60 days following adoption to challenge the final plan including the designation of blighted areas. (Health & Saf. Code, § 33500.) Consequently, their present attack on the public use statement in the resolution of necessity and the eminent domain complaint is but a disguised challenge to the redevelopment plan barred by the 60-day statute of limitations.

Nevertheless, the Duseks pursue their crusade against what they perceive to be omnipotent redevelopment agencies. They contend redevelopment agencies must specifically identify what use is to be made of each parcel within a project area or they will acquire any property for any purpose without any explanation whatsoever. This same argument was made by the Duseks and rejected in their CEQA appeal. The unresolved fate of the Pickwick Hotel has dissuaded developers from proposing specific uses for the property. Consequently, the Agency is attempting to remove a blighted structure to renew interest in developing the area. The broad language of section 1245.230 does not foreclose the Agency from implementing the redevelopment plan in this manner until a specific proposal for the property is accepted.

The Duseks concede the Agency's resolution of necessity withstands a section 1085 deferential standard of review; therefore, a remand to the trial court with instructions to apply the proper standard is unnecessary. The judgment of dismissal is reversed. As a result, the Duseks are not entitled to litigation expenses (§ 1235.140), the award of attorney's fees is reversed, and the cross-appeal is moot. The Agency is entitled to costs of appeal. The trial court is directed to resume the trial of the eminent domain action.

Trotter, P. J., and Sonenshine, J., concurred.