Filed 7/19/24; Certified for Publication 7/31/24 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF ONTARIO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WE BUY HOUSES ANY CONDITION, LLC,<br><br>    Defendant and Respondent. | D083080<br><br><br>(Super. Ct. No. CIVSB2111984) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Khymberli S. Y. Apaloo, Judge.  Affirmed.

Best & Krieger, Mark A. Easter and Guillermo A. Frias for Plaintiff and Appellant.

Palmieri, Hennessey & Leifer, Patrick A. Hennessy and Erin B. Naderi for Defendant and Respondent.

Plaintiff City of Ontario (the City) filed this eminent domain action to obtain properties owned by We Buy Houses Any Condition, LLC (We Buy Houses).  The trial court granted summary judgment against the City, finding it had not articulated a "proposed project" as required to exercise its

power of eminent domain.  The court then granted We Buy Houses's request for attorney fees, making certain reductions to the requested amounts.

The City appeals, contending that the trial court erred by requiring it to identify a particular project.  We find the City's arguments unpersuasive and conclude that the trial court properly rejected the City's effort to exercise eminent domain.

The City separately argues that the fee award entered by the trial court constituted an abuse of discretion.  The City claims, among other things, the trial court erred by failing to adequately explain its award, awarding fees unrelated to We Buy Houses's motion for summary judgment, and awarding fees for excessive or duplicative work.  Finding no abuse of discretion, we affirm the fee award.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

We Buy Houses owns multiple vacant lots adjacent to the Ontario International Airport in an area zoned for industrial use.  According to the City, the properties "do not conform to applicable City and Airport land use requirements for development and suffer from impacts relating to Airport operations and general area blight."

In 2021, the City held a public hearing, after which the city council adopted a resolution of necessity authorizing the City to commence eminent domain proceedings to acquire the properties.  The resolution of necessity stated:  "The public uses for which the real property interest is to be acquired are mitigation of airport impacts and elimination of blight in the City of Ontario, San Bernardino County, California.  Sections 37350.5 and 50470 of the California Government Code authorizes [*sic*] the City to acquire by

---

[1]    We Buy Houses has sought judicial notice of the City's request for an extension of time to file its opening brief.  As this document is not relevant to our disposition, the request for judicial notice is denied.

2

eminent domain real property necessary for such purposes." The council found that "[t]he public interest and necessity require the proposed project" and "[t]he proposed project is planned or located in the manner that will be most compatible with the greatest public good and least private injury." However, the resolution did not describe any proposed project.

The City subsequently filed this action seeking to take We Buy Houses's properties by eminent domain.

Relying in large part on *City of Stockton v. Marina Towers LLC* (2009) 171 Cal.App.4th 93 (*Marina Towers*), We Buy Houses filed a motion for summary judgment on the ground that the City had no public project and had failed to describe any public project in its resolution of necessity. The City argued that because the resolution of necessity stated that "property is being acquired to mitigate airport impacts and for the elimination of blight," "the project [was] adequately stated," and the City did not have to identify a "particular ultimate use or project."

The trial court agreed with We Buy Houses that the City had not provided an adequate project description. After summarizing some of the "fundamentals of eminent domain law," the court concluded, "[t]here is nothing in the Eminent Domain Law which states that just because a city would be using a property for a 'public use,' [it does] not have to have a 'proposed project' supporting the condemnation. The law requires both." The court found there was no "specific project to accomplish [the City's] aims" of mitigating blight and airport impacts. The court reasoned it was therefore not possible for the City to determine "that the 'proposed project' was in the public interest, was necessary, that it was planned or located in the manner most compatible with the public good and least private injury, and the property at issue was necessary for the project," as required by statute.

3

Accordingly, the court held that the City had committed a "gross abuse of discretion" and granted summary judgment to We Buy Houses.

After entering judgment against the City, the court granted We Buy Houses's request for fees pursuant to Code of Civil Procedure section 1268.610. The court found the opinions of the City's fee expert were not entitled to much weight because he did not have "any demonstrated background in the type of work that was done in this particular case" or "knowledge about reasonable rates for the Inland Empire." The court further noted it had "seen quite a few of these" cases and was "going to apply [its] best judgment." The court awarded reduced fees to We Buy Houses, observing that there was no apparent need for most of the services of a second law firm hired by We Buy Houses, time spent on "miscellaneous post-complaint communications," or time spent drafting a trial brief after the motion for summary judgment. The court also found the lead partners had billed for duplicative tasks in connection with the motion for summary judgment, so awarded half of the time billed by each. The court awarded a total of $246,744.50 of the requested $331,161.50, disallowing $75,186.50 of We Buy Houses's claimed fees.

The City has appealed both the judgment and the fee award.

DISCUSSION

A. *Failure to Identify a Proposed Project*

      1. *Standard of Review*

We review the trial court's order granting We Buy Houses's motion for summary judgment de novo. (*Ryan v. Real Estate of Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642.) The City does not contend there exist any disputed issues of material fact, so the question before us is purely legal. (*Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158, 1162.)

      2. *Analysis*

California enacted the "Eminent Domain Law," title 7 of the Code of Civil Procedure, as a comprehensive statutory scheme to define the substantive and procedural parameters of eminent domain. (See, e.g., *Property Reserve, Inc. v. Superior Court* (2016) 1 Cal.5th 151, 201, fn. 20.) "Except as otherwise specifically provided by statute, the power of eminent domain may be exercised only as provided in" the Eminent Domain Law. (Code Civ. Proc., § 1230.020.) In other words, "[t]he provisions of the Eminent Domain Law govern all acquisitions by eminent domain except to the extent that specific provision is otherwise made by statute." (Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc. (2007 ed.), foll. § 1230.020, p. 229.)

Among the requirements laid out in the Eminent Domain Law, a government may exercise its power to acquire property for a proposed project only if all of the following are established:

"(a) The public interest and necessity require the project[;]

"(b) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury[; and]

5

"(c) The property sought to be acquired is necessary for the
project." (Code Civ. Proc., § 1240.030.)

Thus, a "governing entity [must] identify a 'project' with a public
purpose before it undertakes to condemn private property." (*Marina
Towers*, *supra*, 171 Cal.App.4th at p. 107.) "[A] resolution of necessity
that does not identify a project with sufficient specificity, such that
persons of ordinary intelligence can discern what the 'project' is, cannot
support the taking of private property." (*Id*. at p. 114.)

Before condemning a property, the governing body of a public entity
must adopt a "resolution of necessity" that, among other things, contains a
determination that these requirements have been met. (Code Civ. Proc.,
§§ 1245.220, 1245.230.) The adoption of a resolution of necessity
"conclusively establishes the matters referred to in Section 1240.030" unless
"its adoption or contents were influenced or affected by gross abuse of
discretion by the governing body." (Code Civ. Proc., §§ 1245.250, subd. (a),
1245.255, subd. (b).) Failure to sufficiently identify the "proposed project" in
a resolution of necessity constitutes "a gross abuse of discretion." (*Marina
Towers*, *supra*, 171 Cal.App.4th at p. 114.) "If a resolution of necessity does
not contain an adequate project description, the [public entity] cannot make
the three findings required by section 1240.030 . . . . Consequently, a
recitation of statutory findings in such a resolution is invalid and lacks
evidentiary support. Likewise, the adoption of a resolution of necessity that
lacks an adequate project description constitutes a failure to follow
statutorily mandated procedures." (*Id*. at pp. 114–115.)

The City concedes, "*Marina Tower* correctly states that the 'Eminent
Domain Law requires that the local governing entity sufficiently identify a
"project" with a public purpose before it undertakes to condemn private
property.' " We therefore do not understand the City to be disputing that the

6

eminent domain law requires a project, not simply a public use.  Rather, the City appears to argue that its attempt to exercise eminent domain was not constrained by the eminent domain law because its authority to condemn without identifying a project was "otherwise specifically provided by statute," Code of Civil Procedure section 1230.020—specifically:  (a) the Community Redevelopment Law (CRL) and (b) authorities empowering it to acquire and make use of land for airport-related purpose.

### a.  *The CRL*

The City claims because the properties at issue are blighted, the Community Redevelopment Law (CRL), Health and Safety Code sections 33000 to 37990, authorized its exercise of eminent domain.  The City argues that the trial court failed to consider the CRL, specifically Health and Safety Code section 33037, as well as language from the opinion in *Marina Towers*, which the City contends create a "safe harbor" from the requirements of the eminent domain law.  As we shall explain, neither the language of *Marina Towers* nor what remains of the CRL authorized the City to condemn the properties without identifying a proposed project.

The CRL was enacted "to help local governments revitalize blighted communities and increase the supply of affordable housing."  (*City of Chula Vista v. Stephenshaw* (2023) 91 Cal.App.5th 352, 357 (*Stephenshaw*).)  It created new municipal bodies, "redevelopment agencies," to effectuate this purpose.  (*Ibid.*)  These redevelopment agencies were empowered to identify blighted project areas for proposed development.  (*Emmington v. Solano County Redevelopment Agency* (1987) 195 Cal.App.3d 491, 497.)  To substantiate a finding of blight, the redevelopment agency had to identify a " 'serious physical, social, or economic burden on the community which cannot reasonably be expected to be reversed or alleviated by private

7

enterprise acting alone' " and at least "one of the characteristics of blight as set out in Health and Safety Code sections 33031 or 33032." (*Ibid.*, citing Health & Saf. Code, § 33030.) Having identified a blighted area, the agency could then promulgate a redevelopment plan for the proposed project area, subject to various administrative procedures. (See generally Health & Saf. Code, §§ 33330–33354.6.) If the municipality adopted the plan, the agency could exercise eminent domain to implement it if the plan and the ordinance adopting it included such authority. (See Health & Saf. Code, §§ 33342, 33367, subd. (d)(6).)

In the 2010's, in response to a fiscal crisis, the Legislature froze the powers of redevelopment agencies and dissolved them. (See *Stephenshaw*, *supra*, 91 Cal.App.5th at pp. 357–358.) The Legislature suspended agencies' power to begin "condemnation proceeding[s] or begin the process to acquire real property by eminent domain." (Health & Saf. Code, § 34165, subd. (g).) It then "transfer[red] control of redevelopment agency assets to successor agencies, . . . contemplated to be the city or county that created the redevelopment agency." (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 251.)

Successor agencies were required to "[c]ontinue to make payments due for enforceable obligations" while "[e]xpeditiously wind[ing] down the affairs of the redevelopment agency." (Health & Saf. Code, § 34177, subds. (a), (h).) Successor agencies "lack[ed] the authority to . . . create new enforceable obligations or begin redevelopment work, except in compliance with an enforceable obligation." (Health & Saf. Code, § 34177.3.) A successor agency thus inherited "the authority, rights, and powers of the redevelopment agency to which it succeeded" only for a few specified purposes relating to existing obligations. (Health & Saf. Code, § 34177.5.)

8

Despite functionally gutting it, the Legislature has not repealed the CRL in its entirety.  (See generally Health & Saf. Code, §§ 33000–37990.)  The City therefore argues that vestiges of the CRL and cases interpreting the CRL authorized its actions here.

The only provision of the CRL the City cites is Health and Safety Code section 33037, which provides:

"[I]t is declared to be the policy of the State:

> "(a) To protect and promote the sound development and redevelopment of blighted areas and the general welfare of the inhabitants of the communities in which they exist by remedying such injurious conditions through the employment of all appropriate means.

> "(b) That whenever the redevelopment of blighted areas cannot be accomplished by private enterprise alone, without public participation and assistance in the acquisition of land, in planning and in the financing of land assembly, in the work of clearance, and in the making of improvements necessary therefor, it is in the public interest to employ the power of eminent domain, to advance or expend public funds for these purposes, and to provide a means by which blighted areas may be redeveloped or rehabilitated.

> "(c) That the redevelopment of blighted areas and the provisions for appropriate continuing land use and construction policies in them constitute public uses and purposes for which public money may be advanced or expended and private property acquired, and are governmental functions of state concern in the interest of health, safety, and welfare of the people of the State and of the communities in which the areas exist.

> "(d) That the necessity in the public interest for the provisions of this part is declared to be a matter of legislative determination."

The City claims this provision authorizes it "to seek the acquisition of the properties by eminent domain for the elimination of blight."

We do not agree that this CRL provision exempts the City from its obligation to provide an adequate project description under the eminent

10

domain law. (See Code Civ. Proc., § 1240.030; *Marina Towers*, *supra*, 171 Cal.App.4th at pp. 107–109.) Redevelopment agencies generally had to exercise their authority in conformity with the eminent domain law. (See, e.g., *Santa Cruz County Redevelopment Agency v. Izant* (1995) 37 Cal.App.4th 141, 148–149; *Redevelopment Agency v. Norm's Slauson* (1985) 173 Cal.App.3d 1121, 1125–1126.) The Legislature has decreed that any exception to the eminent domain law must be "specifically provided by statute." (Code Civ. Proc., § 1230.020.) Nothing in the language of Health and Safety Code section 33037 suggests that it creates an exception to the eminent domain law's requirement of an adequate project description.

Nor would such an exception serve the stated objectives of this CRL provision. This provision is focused on "the sound *development* and *redevelopment* of blighted areas," and provides "it is in the public interest to employ the power of eminent domain" when "the *redevelopment* of blighted areas cannot be accomplished by private enterprise alone." (Health & Saf. Code, § 33037, italics added.) In the absence of a proposed redevelopment project, a government's acquisition of property does not itself eliminate blight. In fact, the City admitted this in its February 16, 2021 agenda report, which states, "[T]he acquisition of the Properties without further development . . . will not result in the elimination of blight because it will make permanent current blight conditions as it will result in two permanent nonconforming and unproductive vacant parcels that will further attract nuisances and undesired activities to an already blighted area." Neither the language nor the underlying purpose of Health and Safety Code section 33037 supports the City's argument that it may take private property to eliminate blight without identifying any project to accomplish this public purpose.

11

*Marina Towers* does not support such a result, as the City contends. Although the court in *Marina Towers* discussed the CRL at some length, it ultimately concluded that "[t]he CRL is inapplicable to this case" because the City of Stockton had "consistently denied condemning this property under the authority of the CRL." (*Marina Towers*, *supra*, 171 Cal.App.4th at pp. 106, 107.) The court therefore analyzed the case solely under the eminent domain law. (*Id.* at pp. 107–113.)

The City relies on a sentence in *Marina Towers* referring to a "safe harbor of the CRL" to support its argument that the City was not required to identify a project for the elimination of blight. This sentence reads as follows: "Because [the City of Stockton] did not employ the redevelopment agency or redevelopment law to condemn [the owner's] parcels, it may not take advantage of the safe harbor of the CRL to validate the resolution of necessity. An identifiable 'project' with a public purpose must be set forth in the resolution." (*Marina Towers*, *supra*, 171 Cal.App.4th at p. 111.) The City claims that because the court used the disjunctive—"redevelopment agency *or* redevelopment law"—if a city "employ[s]" the CRL, it need not identify a specific "project" that would address blight.

The City is reading too much into this sentence. The basic point *Marina Towers* was making was that the provisions of the CRL were inapplicable because the City of Stockton was not claiming to be acting under the CRL. Thus, the court did not have occasion to decide what the result would have been if the city had invoked the CRL. Cases are not authority for propositions not considered. (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.) Moreover, although the court in *Marina Towers* suggested that a redevelopment agency was not required to identify specific property uses if it

12

followed prescribed procedures in exercising its powers of condemnation (*Marina Towers*, *supra*, 171 Cal.App.4th at p. 106), the CRL did require redevelopment agencies to formulate detailed redevelopment plans before taking property by eminent domain.  (Health & Saf. Code, § 33330 et seq.)  As the court noted:  "Redevelopment plans are subject to rigorous rules that include public agency review, reports, public hearings, and the passing of ordinances containing specified findings."  (*Marina Towers*, at pp. 105–106; see also 8 Miller & Starr, Cal. Real Estate (4th ed. Dec. 2023 update) §§ 30:11–30:12, pp. 30–63 to 30–69.)  Here, by contrast, the City does not claim to be acting pursuant to a redevelopment plan or to have followed any of the procedures that would have governed a redevelopment agency's exercise of its statutory powers.  *Marina Towers* does not sanction the City's deficient resolution of necessity.

For similar reasons, the City's reliance on *Anaheim Redevelopment Agency v. Dusek* (1987) 193 Cal.App.3d 249, is misplaced.  There, the court was asked to resolve whether a redevelopment agency had properly identified a "public use."  (*Id*. at p. 263.)  The agency had passed a resolution "to acquire the Pickwick Hotel to eliminate blight and for redevelopment purposes. . . ." (*Id*. at p. 252.)  The agency's redevelopment plan "specifically targeted the Pickwick for condemnation and demolition."  (*Id*. at p. 253, fn. 5.)  The court easily held that the elimination of blight was a public use and found it "was established when the redevelopment plan was adopted[,] at which time the Agency acquired the statutory power to condemn property within the redevelopment district."  (*Id*. at p. 264.)  Although the owner claimed "redevelopment agencies must specifically identify what use is to be made of each parcel within a project area or they will acquire any property for any purpose without any explanation whatsoever," the court held that the agency

was permitted to implement its redevelopment plan by "attempting to remove a blighted structure to renew interest in developing the area" and waiting until "a specific proposal for the property was accepted." (*Ibid.*) Here, there is no redevelopment agency and no redevelopment plan adopted pursuant to the CRL. *Dusek* did not hold that a city's general allusion to blight authorizes the exercise of condemnation powers without regard to whether it has a proposed project. Moreover, the only issue in *Dusek* was whether there was a sufficient statement of public use; no argument was made that there was an inadequate project description. (*Id.* at pp. 263–264.)

Finally, the City briefly claims "the CRL is not the exclusive source of authority for acquiring property by eminent domain for the elimination of blight." However, it fails to explain how any other authority would excuse the City from the requirement to identify a project. "We are not bound to develop [an] appellant['s] arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as" forfeited. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

b. *Airport-Related Authorities*

Separately, the City claims the trial court failed to consider or address authorities empowering it to acquire and make use of land for airport-related purposes. The City contends these authorities permit it to condemn land to mitigate the impact of airport-related noise without the need to identify a proposed project.

The City first cites Code of Civil Procedure section 1240.110 and Public Utilities Code section 21670 et seq. as authority for the proposition that it is authorized to "undertake measures to minimize the public's exposure to excessive noise and safety hazards within areas around public airports." But

14

these provisions do not purport to excuse a municipality from the general requirements of the eminent domain law.  In fact, Code of Civil Procedure section 1240.110 is itself part of the eminent domain law.  And it is unclear how the mere acquisition of We Buy Houses's vacant lots could constitute noise abatement.

The City also cites Government Code section 37350.5, which states, "A city may acquire by eminent domain any property necessary to carry out any of its powers or functions."  Although this authorizes a city to exercise eminent domain, it does not "specifically provide[ ]" that such power is not subject to the provisions of the eminent domain law.  (Code Civ. Proc., § 1230.020.)

Similarly, the City contends there is "[s]pecific authority for acquiring property for airport and aviation purposes."  The City cites Government Code section 50470, which provides:

> "[A] local agency may acquire property by . . . condemnation . . . for the purposes of this article and may use any real property which it owns or acquires within or without its limits as a site for an airport.  The local agency may erect and maintain hangars, mooring masts, flying fields, and places for flying, take-off, landing, and storage of aircraft, together with signal lights, radio equipment, service shops, conveniences, appliances, works, structures, and other air navigation facilities, now known or hereafter invented, of such number and character and in such places as may be necessary or convenient."

The City also cites Government Code section 50474, which states:  "In connection with the erection, improvement, expansion, or maintenance of such airports or facilities, a local agency may:  . . .  Exercise powers necessary or convenient in the promotion of aeronautics and commerce and navigation by air."

15

Neither of these provisions purports to excuse a local agency from following the eminent domain law's requirement to identify a project. Moreover, the City does not argue that it needs the properties for "an airport" or any of the airport-related uses listed. That is, the City is not purporting to exercise its authority to further airport development or "aeronautics and commerce and navigation by air," but instead claims the land *is impaired by* airport operations.

Finally, the City notes that, "All or any portion of land acquired by a governmental agency for airport purposes may be used for park or recreation purposes until actually needed for airport development." (Gov. Code, § 50471.) This provision is irrelevant as the City does not claim it acquired the land for eventual "airport development." Nor does the City point to any evidence that it would use the land "for park or recreation purposes" in the interim. Rather, it has failed to identify any proposed use, ultimate or intermediary. Like all the other statutes cited by the City, this one does not "specifically provide[ ]" for an exception to the Eminent Domain Act (Code Civ. Proc., § 1230.020) or its requirement of a project description. Accordingly, the City has failed to demonstrate the existence of any applicable exception to this requirement.

B. *Attorney Fees*

      1. *Standard of Review*

An award of attorney fees "is left to the sound discretion of the trial judge, who is in the best position to evaluate the services rendered, and the court's decision will not be disturbed on appeal unless it is clearly wrong." (*City of Oakland v. Oakland Raiders* (1988) 203 Cal.App.3d 78, 85 (*Raiders*).)

      2. *Analysis*

The City complains that the trial court abused its discretion by improperly awarding fees for services unrelated to We Buy Houses's summary judgment motion. Under Code of Civil Procedure section 1268.610, "the [trial] court shall award the defendant [its] litigation expenses whenever . . . [an eminent domain] proceeding is wholly or partly dismissed for any reason." " 'Litigation expenses' " is defined to include:

> "Reasonable attorney's fees . . . where such fees were reasonably and necessarily incurred to protect the defendant's interests in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings whether such fees were incurred for services rendered before or after the filing of the complaint."

(Code Civ. Proc., § 1235.140.) According to the City, "[b]ecause there was no trial, only a hearing on the motion for summary judgment, the recoverable expenses are limited to those reasonably and necessarily incurred in prevailing on the motion."

We disagree. The Legislature has directed that litigation expenses are recoverable when a case has been "dismissed *for any reason.*" (Code Civ. Proc., § 1268.610, italics added.) As the Legislature meant to award fees for cases that do not proceed to trial, the City's focus on the mechanism of dismissal is unwarranted. Litigants generally pursue multiple avenues of pre-trial resolution without abandoning ongoing trial preparation efforts. Whether these trial preparation efforts ultimately lead to the dispositive

17

motion or issue does not directly correlate with whether they were reasonable and necessary at the time.

The City nonetheless suggests courts must determine in retrospect what ended up being necessary to the disposition. The City cites no authority for this interpretation. And we have found that courts take a much broader reading of these provisions. For example, in *City of San Jose v. Great Oaks Water Co.* (1987) 192 Cal.App.3d 1005, an eminent domain action was resolved by summary judgment on the grounds that the plaintiff failed to comply with Government Code section 7267.2, which required it to provide a written summary of the basis for its valuation of the property before adopting a resolution of necessity, or the California Environmental Quality Act. (*Great Oaks Water Co.*, at pp. 1008, 1014, 1017.) The plaintiff disputed the trial court's award of fees for a related Public Utilities Commission (PUC) "valuation proceeding." (*Id.* at p. 1020.) The court of appeal determined that "fees attributable to the PUC proceeding were necessitated solely by the [plaintiff's] filing of the instant condemnation action, which was unconditionally dismissed by the trial court." (*Ibid.*) Accordingly, the court held that "the fees incurred . . . in connection with the companion PUC valuation proceeding constitute[d] legitimate litigation expenses." (*Ibid.*) Although it appears the PUC proceeding was not relevant to the bases for dismissal, the court nonetheless found that fees incurred in connection with the proceeding were recoverable.

The City next claims the trial court's "ruling provides no basis for determining what was or was not reasonably and necessarily incurred." We disagree. The court held a hearing on the fee motion and explained its reasoning to the parties. The court first addressed We Buy Houses's use of two law firms, explaining that it made "substantial reductions on [one]

18

firm . . . because their fees were really high and they didn't demonstrate that they had any real special knowledge [or] experience. The court further explained particular categories of fees which it found were not reasonable, including certain post-complaint communications, the drafting of a trial brief, and duplicative time spent on the summary judgment briefing. The City did not ask the court for further reasoning at the hearing, and we find the court's statements an adequate explanation of its award.

The City relies almost exclusively on an expert report that the trial court found was not worthy of much weight. As the court explained, the City's expert had no "demonstrated background in the type of work that was done in this particular case" and no demonstrated "knowledge about reasonable rates for the Inland Empire." The City does not argue that this determination was unreasonable or otherwise address the trial court's credibility determination. We therefore must assume that the trial court's assessment of the expert was proper and appropriate weight was given to his report.

The City argues at length that fees billed for research were excessive, because "from the start of the case until its summary judgment conclusion, We Buy Houses knew that the objection on which it prevailed would be based solely on *Marina Towers*." In fact, We Buy Houses raised a number of other objections in opposition to the City's proposed exercise of eminent domain and in its answer to the City's complaint. The trial court was not persuaded by the City's contention that We Buy Houses "could have done this summary judgment motion only on one issue and so, therefore, [it] should have only focused on the one issue the whole entire time." We agree that there is no basis to limit the recovery of fees to efforts related solely to the issues that ultimately disposed of the case.

19

The City also argues that there was no need for We Buy Houses to engage two law firms.  As noted above, the trial court agreed and reduced the fees of the second firm by over 70 percent, from $33,340.00 to $9,486.50.  The City fails to establish that this reduction was unreasonable.[2]  Similarly, although the City complains of duplicative work between two lead partners representing We Buy Houses, the trial court considered this and halved much of each of their time.  The City has not shown that this was an unreasonable determination.

The City points to several other instances of what it claims were excessive fees, relying on its own conclusory statements and its discredited expert's opinions for support.  The City has not shown the trial court's award was "clearly wrong."  (*Raiders*, *supra*, 203 Cal.App.3d at p. 85.)  We decline the City's invitation to second-guess the trial court's reasoned decision.

## DISPOSITION

The judgment and attorney fee award are affirmed.  We Buy Houses is entitled to its costs on appeal.

---

[2]	The City erroneously contends the trial court reduced the fees *by* $9,486.50, not *to* $9,486.50.  The actual reduction (72%) was, in fact, close to the amount the City claims is reasonable (80%).

BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


KELETY, J.

21

Filed 7/31/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF ONTARIO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WE BUY HOUSES ANY CONDITION, LLC,<br><br>    Defendant and Respondent. | D083080<br><br>(Super. Ct. No. CIVSB2111984)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed on July 19, 2024, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to:  All parties

2